FABER v. UNITED STATES.

(Circuit Court, S. D. New York.  November 14, 1907.)

No. 4,812.

1. CUSTOMS DUTIES—CUBAN TREATY—PREFERENTIAL DUTY.

Cuban Commercial Convention, art. 2, 33 Stat. 2137, prescribes that Cuban products "shall be admitted" at a reduction from the duty provided by the tariff act of 1897, "or as may be provided by any tariff law of the United States subsequently enacted"; and article 8, 33 Stat. 2140, prescribes that "the rates of duty herein granted * * * are and shall continue * * * preferential in respect to all like imports from other countries." *Held*, that the reduction contemplated was from the rates provided in any general tariff law, and not from those in special laws, like the Philippine tariff act, or reciprocal commercial agreements.

2. SAME—"OTHER COUNTRIES"—PHILIPPINES.

The Philippines are not another country, within the meaning of Cuban Commercial Convention, art. 8, 33 Stat. 2140, prescribing on importations from Cuba treatment preferential in respect to like imports from "other countries."

On Application for Review of a Decision of the Board of United States General Appraisers.

These proceedings relate to an importation into the port of New York by G. W. Faber, with respect to which the Board of General Appraisers affirmed the assessment of duty as made by the collector. The decision of the Board, which is reported as G. A. 6,520 (T. D. 27,847), reads as follows:

HAY, General Appraiser. These protests raise a question as to the construction to be placed upon certain paragraphs of the treaty between the United States of America and the Republic of Cuba, as the same was approved by Congress on December 17, 1903 (32 Stat. 4136). The protestant's contention is that by the provisions of this treaty certain cigars and other commodities imported from Cuba should be admitted into the ports of this country upon the payment of customs duties 20 per cent. less than the rates paid upon like commodities coming from the Philippine Islands, which, under existing laws, pay 75 per cent. of the rates provided for in the tariff act of 1897, and that certain alcohol, by virtue of said provision, should be admitted into the ports of the United States upon the payment of customs duties of 20 per cent. less than are charged upon like merchandise coming from France, Germany, Italy, or Portugal, which merchandise coming from these countries, under certain reciprocity agreements made and entered into under Tariff Act July 24, 1897, c. 11, § 3, 30 Stat. 151 [U. S. Comp. St. 1901, p. 1627], is admitted into this country at the rate of $1.75 per proof gallon. The rates of duty applied to all of such merchandise by the collector in the cases now before us were 20 per cent. less than the regular duty provided therefor by the act of 1897.

The stipulations of the treaty which touch upon the questions here under consideration are contained in articles 2 and 8.  Article 2 reads as follows (33 Stat. 2137): "Art. 2. During the term of this convention, all articles of merchandise not included in the foregoing article 1, and being the product of the soil or industry of the Republic of Cuba, imported into the United States, shall be admitted at a reduction of twenty per centum of the rates of duty thereon as provided by the tariff act of the United States approved July 24, 1897,

or as may be provided by any tariff law of the United States subsequently enacted." The pertinent part of article 8 reads as follows (33 Stat. 2140): "Art. 8. The rates of duty herein granted by the United States to the Republic of Cuba are and shall continue during the term of this convention preferential in respect to all like imports from other countries, and in return for said preferential rates of duty granted to the Republic of Cuba by the United States it is agreed that the concession herein granted on the part of the said Republic of Cuba to the products of the United States shall likewise be, and shall continue, during the term of this convention preferential in respect to all like imports from other countries." The remainder of this article relates entirely to the importation of sugar.

The contention of the importer is that the stipulation of article 8 that the rates of duty granted to the United States to the Republic of Cuba are and shall continue during the terms of the convention preferential in respect to all like imports from other countries must influence and control all other stipulations of the treaty, and that the Philippine Islands are another country within the meaning of this article. A question very similar to this was under consideration by this board in the Franklin Sugar Refining Company's Case, G. A. 5,980 (T. D. 26,189), wherein it was contended that, under the provisions of article 2, sugar coming from the island of Cuba should be admitted at 20 per cent. less than 75 per cent. of the regular rate charged upon like commodities coming from the Philippine Archipelago, by reason of the concluding language of said article, which, after fixing the rate at 20 per cent. of the duty provided in the act of 1897, reads: "Or as may be provided by any tariff law of the United States subsequently enacted." With reference to that the board in its opinion said: "This clause manifestly refers to any general tariff law which may supersede the present Dingley act, and not to any special law like that governing our tariff relations with the Philippine Islands." It was pointed out that this conclusion was sustained by the proviso of article 8, which has no bearing upon the case now under consideration, as it refers entirely to sugar. In the case of Fourteen Diamond Rings v. U. S., 183 U. S. 179, 22 Sup. Ct. 59, 46 L. Ed. 138, it was held that when the Philippine Islands ceased to be Spanish they ceased to be foreign country. In De Lima v. Bidwell, 182 U. S. 180, 21 Sup. Ct. 743, 45 L. Ed. 1041, the definition given years ago by Chief Justice Marshall, that a foreign country was one exclusively within the sovereignty of a foreign nation and without the sovereignty of the United States, was reaffirmed; and the same doctrine, in a general way, has been announced in a large number of cases. The Ship Adventurer, 1 Brock. 235, Fed. Cas. No. 93; The Boat Eliza, 2 Gall. 4, Fed. Cas. No. 4,346; Taber v. U. S., 1 Story, 1, Fed. Cas. No. 13,722; U. S. v. Recorder, 1 Blatch. 218, Fed. Cas. No. 16,130.

So far as it has application to the question involved in these cases, we are unable to see any difference between the phrase "foreign country," as used in these decisions, and the phrase "other countries," as used in article 8 of the Cuban treaty. "Other countries" means countries other than the United States. To be a country other than the United States, that country must be a country foreign to the United States; that is, a country "exclusively without the sovereignty of the United States." The Philippine Archipelago is no more another country than Alaska, Hawaii, or Porto Rico. None of them are states of the American Union; but the government under which the people of each live is prescribed by the American Congress, and all are within the sovereignty of the United States. Commodities from Alaska, Hawaii, and Porto Rico are all admitted into the United States free of duty, the same as commodities from Florida are admitted into New York or Pennsylvania. It would be as reasonable, therefore, to ask that the commodities of Cuba be admitted at 20 per cent. less than the commodities of Porto Rico, which are admitted free of duty, as that they should be admitted at 20 per cent. less than the products of the Philippine Archipelago, which are admitted at 75 per cent. of the duties prescribed by the act of 1897. This, we think, is conclusive, and it disposes of the importer's contention, so far as the same is based upon the preferential Philippine tariff.

But there is another aspect of the case which we think not only disposes of that contention, but also of the contention that the alcohol covered by the

protests should be admitted at 20 per cent. below the rate charged under reciprocity agreements on alcohol coming to the United States from France, Germany, Italy, or Portugal. Article 2 of the Cuban treaty is specific, and expressly declares that the rates of duty upon certain Cuban commodities shall be 20 per cent. of the rates provided by the tariff act of 1897; while article 8 is, to say the least, exceedingly general in its terms. It is a principle of the law of contracts, equally applicable, we think, to a treaty, that, where two stipulations of a contract or agreement in writing shall conflict, the one which is the more specific shall control. These provisions of article 8, not being direct in terms, are not and cannot be self-acting. The provisions of article 2 are self-acting. Further than this we do not feel called upon to interpret or express any opinion as to the meaning of the language used in article 8 or the intention of the high contracting parties in adopting it. If we were to hold that it varied the provisions of article 2 to the extent of the importer's contention, it would follow as a logical consequence that every tariff concession made by the United States to another country would ipso facto reduce the rate upon like commodities coming from Cuba. We think the question is parallel with that which has so frequently arisen relative to the favored nation clause contained in the treaties between the United States and many of the European countries. In discussing the effect of that clause the Supreme Court, in Whitney v. Robertson, 124 U. S. 190, 8 Sup. Ct. 456, 31 L. Ed. 386, said: "It was never designed to prevent special concessions, upon sufficient consideration, touching the importation of specific articles into the country of the other. It would require the clearest language to justify a conclusion that our government intended to preclude itself from such engagements with other countries, which might in the future be of the highest importance to its interests."

The provisions of article 8 do not, in our judgment, in any way vary or affect the clear and express stipulations of article 2. These provisions could not act automatically; and, in the absence of legislation giving force and effect to them, the question as to whether or not the products of the soil or industry of Cuba should, under the language of that article, be admitted at a rate preferential in respect to like imports coming from countries with which we have reciprocal agreements, reducing the regular rates, is a political one, of which this board and the courts have no jurisdiction, and which can be settled only by the high contracting parties through the channels of diplomacy. Nicholas' Case; G. A. 5,670 (T. D. 25,260); Bartram v. Robertson, 122 U. S. 116, 7 Sup. Ct. 1115, 30 L. Ed. 1118; Whitney v. Robertson, 124 U. S. 190, 8 Sup. Ct. 456, 31 L. Ed. 386.

The protests are overruled.

Hatch & Clute (Walter F. Welch, of counsel), for importer.
J. Osgood Nichols, Asst. U. S. Atty.

MARTIN, District Judge. Decision affirmed.