ELMER PLEMONS v. STATE.

No. A.-8282. April 9, 1932.
(10 Pac. [2d] 285.)

F. L. Welch, for plaintiff in error.

J. Berry King, Atty. Gen., and Geo. J. Fagin, Asst. Atty. Gen., for the State.

CHAPPELL, J. Plaintiff in error, hereinafter called defendant, was convicted in the district court of Push-

mataha county of the crime of attempted robbery with firearms, and his punishment fixed by the jury at imprisonment in the state penitentiary for a period of ten years.

The evidence of the state was that defendant, Crockett Carlton, "Red" Bargsley, and "Slim" went together to the town of Tuskahoma for the purpose of robbing the bank in that town; that the parties came to Carlton's home on Thursday; that they stayed Thursday night between Haileyville and Hartshorne, at a tourist park; that they had a camp in the woods near Carlton's home, and stayed there Friday night and Saturday; that Carlton and Bargsley went to Sasakwa and got a tank of air to be used in cutting the safe, and brought it back with them and took it to Tuskahoma when they went to rob the bank; that all the parties left the camp in the woods and went to Tuskahoma for the purpose of robbing the bank; that Plemons had a .41 caliber pistol; that Bargsley had a revolver and a Winchester rifle and the others had pistols; that two of them were in a Dodge coupe and the other two in a Dodge Senior Six, belonging to defendant; that they drove to Tuskahoma about 3 o'clock at night, stopping one car near a garage close to the bank and the other car by the bank; that Bargsley stayed in one of the cars and the other three got out and went up to a window of the bank; that Verdie Hicks and Jim Payne were night watchmen in the town of Tuskahoma, guarding the bank and the business institutions of the town; that they noticed the two cars pull up to the bank, and saw some men go to the bank window and begin to fool with it; that they separated, one of them going toward the bank from one side, and the other toward the bank from the other side; that, when Payne got near the garage where one of the cars was parked, he heard somebody say, "All right, stick 'em up big boy, stick 'em up," and then shoot; that some-

thing like 20 shots were fired by the officers and the men attempting the robbery; that Crockett went up on the hill; that about that time he heard Bargsley tell somebody to "stick 'em up"; that a number of shots were fired, one of which struck Bargsley; that Bargsley was found dead the next day, in his car, several miles from the scene of the attempted robbery; that the hindsight off a rifle and a .45 automatic pistol were found near the bank; that considerable blood was found on the ground where the pistol was found; that a piece of shirt found near the bank corresponded with a torn-out place in the shirt worn by Bargsley when he was found dead in his car; that defendant appeared at the home of Bargsley on Sunday following the attempted robbery on Saturday night and inquired for Bargsley; that he was pale and very much agitated, and told Mrs. Bargsley that he and Bargsley and the others had attempted to rob the bank at Tuskahoma, and that there had been some shooting.

The defense was an alibi, but admissions made by defendant greatly weakened his testimony.

Defendant first contends that the court erred in overruling his demurrer to the evidence of the state, and that court further erred in denying his requested instruction that the jury be advised to find him not guilty.

In Teague v. State, 13 Okla. 270, 163 Pac. 954, this court said:

"Where there is any competent evidence, reasonably tending to sustain the allegations of the information, the court should not sustain a demurrer to the evidence."

In Baker v. State, 9 Okla. Cr. 47, 130 Pac. 524, 525, this court said:

"Trial courts in Oklahoma are limited in their power to interfere with the determination of issues of fact; and,

where there are any facts from which the jury can legitimately deduct either of two conclusions, a motion to advise a verdict should always be denied, and the question of fact properly submitted under instructions given."

Under the facts as disclosed by this record, it was not error for the court to overrule the defendant's demurrer and deny the requested instruction.

It is next contended that there is no corroboration of the witness, Carlton, who was an accomplice.

It appears from the record that on Thursday before the attempted robbery Bargsley, defendant, and another man unknown to him came to the home of S. L. Bargsley, a brother of the man killed; that they were driving two Dodge cars similar to those used in the attempted robbery, and that they left his place together; that Bargsley was found dead, the next day, in his Dodge car; that a piece of his shirt, the hindsight from his rifle, and a .45 caliber automatic pistol were found at the scene of the attempted robbery; that the parties were driving the Dodge cars. Carlton is further corroborated by Mrs. Bargsley, who testifies that defendant appeared at her home on Sunday and told her about the robbery and the shooting; that defendant was frequently at her home prior to the date of the attempted robbery; that defendant was an associate of her husband; that her husband, defendant, and one Jack Clampy (sometimes called "Slim") left their home on Wednesday before the attempted robbery, driving separate cars; that they all went away in the same direction; that her husband owned a high-power Winchester rifle and a small gun; that he took the small gun with him, but that the rifle had been left down at Carlton's.

The law prescribes no standard for the strength of corroborating evidence, and there is a failure to corrobo-

rate only if there is no evidence legitimately having that effect. Davenport v. State, 20 Okla. Cr. 279, 202 Pac. 18; Hendrix v. State, 22 Okla. Cr. 230, 210 Pac. 734; Wertzberger v. State; 25 Okla. Cr. 1, 218 Pac. 721; Underwood v. State, 36 Okla. Cr. 21, 251 Pac. 507.

There is no merit in the contention that the accomplice is not sufficiently corroborated.

Defendant next contends that the court erred in giving instructions Nos. 3 and 9. His counsel admits that the instructions complained of are correct statements of the law, but the complaint against them and the ground on which they are attacked is that the facts as shown by all the evidence in the case, did not warrant the submitting of such law by the court to the jury, and that the giving of such instructions by the court was in violation of the fundamental rights of defendant.

No objections or exceptions were saved to any of the instructions given by the court, and no additional or different instructions requested. Where no objections are made, nor exceptions taken to the instructions, and where no additional or different instructions are requested, this court will only examine the instructions for fundamental errors. Boutcher v. State, 4 Okla. Cr. 576, 111 Pac 1006; Birdwell v. United States, 10 Okla. Cr. 159, 135 Pac. 445; Russell v. State, 17 Okla. Cr. 164, 194 Pac. 242.

The instructions not being fundamentally erroneous, there is no merit in the contention.

A careful examination of the record discloses that defendant had a fair trial and that the evidence supports the verdict of the jury.

For the reasons stated, the cause is affirmed.

DAVENPORT, P. J., and EDWARDS, J., concur.