## WILLIS NEWTON v. STATE.

No. A-8757.   Jan. 11, 1935.
Rehearing Denied Feb. 8, 1935.
(40 Pac. [2d] 688.)

Hudson & Hudson, W. H. Hills, J. E. Falkenberg, and W. H. C. Taylor, for plaintiff in error.

J. Berry King, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for the State.

EDWARDS, P. J.   The plaintiff in error, hereinafter called defendant, was convicted in district court, Grant county, of robbery with firearms and was sentenced to serve a term of 20 years in the state penitentiary.

On the night of April 13, 1932, the First National Bank of Medford was robbed by two men who entered by breaking windows.   The steel safe, four inches in thickness, was burned through by an acetylene torch and more than $4,400 in money taken, in addition to bonds and travelers' checks.   At the time, one Ed Heiland was night watchman or night marshal, whose duty it was to guard the bank and other business houses during the night. About 1:15 a. m. he was in a cafe about a block from the bank with the proprietor and another person.   Heiland had just ordered a cup of coffee when defendant came in with a pistol in his hand and with a handkerchief over his

face. He required those in the cafe to lie on the floor and stretch their hands before them, he then tied the hands of all, tied them together, took the pistol from Heiland, and forced them to go with him about a block, where he was joined by another masked man with a shotgun, the prisoners were then put in the shadow near the bank building and held under guard. Defendant then went to the telephone exchange, disabled it, and took in custody all of those there, forced them to go with him. By using one of the telephone men as a decoy, he captured a deputy sheriff and took him, with his car, near the bank and placed seven of these captives in the car where defendant's companion guarded them. Defendant then drove a car equipped with an acetylene torch, tank, hose, and material for steel cutting to the sidewalk abutting the bank, broke in the windows, and one of the two men then proceeded to hook up the acetylene torch equipment and cut into the safe. During the operations several persons came along. They were stopped by the man on the outside guarding the prisoners and were taken into custody, so that, by the time the operations were completed, about 20 persons were held captive, most of them in their cars outside the bank. These prisoners included two men driving bread deliveries and one man driving a milk delivery. One young man was pressed into service to aid in the work inside the bank and two others were for a time kept inside the bank. The work was finished and the defendant and the perpetrators then drove away. In November, following, defendant and his brother Joe Newton were apprehended at Chandler and there was found in their car a double-barreled shotgun, three pistols, bullet proof vests, an acetylene outfit with tank, hose, torch, and goggles. Joe Newton was delivered to Texas authorities, defendant claimed the acetylene outfit, and it, with the

car, was turned over to him by the Chandler officers. Later, officers at Medford, seeing pictures of defendant and Joe Newton, had defendant arrested at Tulsa, November 27, 1932, where he had gone after being released at Chandler. The defense was alibi, defendant did not take the stand. The identification of defendant as a participant in the crime is conclusive. The information charges robbery and also sought to bring defendant under the habitual criminal act, section 1820, Okla. Stat. 1931, by alleging a prior conviction, sentence, and commitment in a federal court.

Technically, this case was closely tried, the record contains more than 2,500 pages, defendant's initial brief contains 246 pages. Some 40 assignments of error are argued. These various assignments will not be discussed separately, but those deemed of sufficient importance will be referred to.

The first contention is that the information is insufficient to charge robbery. Citing Wear v. State, 30 Okla. Cr. 118, 235 Pac. 271; Ex parte Grant, 32 Okla. Cr. 217, 240 Pac. 759; Ward v. State, 34 Okla. Cr. 296, 246 Pac. 664; Wissinger v. State, 39 Okla. Cr. 324, 264 Pac. 631. Along with the allegations of time, place, and various details, the information alleges in substance that defendant had a certain deadly weapon, a loaded pistol, which he then and there pointed at and threatened to kill one Ed Heiland and thereby put said Heiland in fear of immediate death, that said Heiland was then and there the custodian of and guarding the banking house of the First National Bank at Medford and had the same under his care and possession. That said banking house was a place of business, attended during banking hours of each secular day by its cashier and other officers and employees, and that defendant, by use of the force and fear set out,

did unlawfully, forcibly, and against the will of said Heiland take from the said banking house and said Heiland said moneys then and there in his possession and under his care as custodian and guard with the intent, etc. It is argued this is insufficient in not alleging the money was taken from a person who attended the bank at the time of the taking and does not allege the money was taken from the person and immediate presence of Heiland. Reliance is mainly on the case of Ward v. State, supra. The robbery in that case was of a person. It was alleged one person was put in fear, the property taken from another, and belonged to a third person. It was so worded that even the court could not be certain what was intended, and it was held the information was too indefinite and uncertain to apprise the accused of the offense sought to be charged.

Defendant's brief refers to the acts shown by the evidence as a "burglary." A burglary is defined by section 1927, Okla. Stat. 1931, as a breaking and entering any building (referring to building in its broadest sense) with intent to commit a crime therein. Larceny is defined by section 2253. Robbery is defined by section 2542, Okla. Stat. 1931. The robbery of a building or banking institution in addition to the robbery of a person is made a crime by section 2543, which is:

"2543. That any person or persons who, with the use of firearms or any other dangerous weapons * * * robs or attempts to rob any place of business, residence or banking institution or any other place inhabited or attended by any person or persons at any time, either day or night, shall be guilty of a felony, and, upon conviction therefor, shall suffer punishment by death, or imprisonment, at hard labor, in the State Penitentiary, for a period of time of not less than five years, at the discretion of the court, or the jury trying the same."

The information is rather full and definite in alleging the things done which constituted the offense. Certainly it is sufficient, when considered in connection with subdivisions 6 and 7, § 2891, Okla. Stat. 1931, which provides that an information is sufficient where the act or omission constituting the offense is clearly and distinctly set forth in ordinary and concise language with such certainty as to enable a person of common understanding to know what is intended and to enable the court to pronounce judgment according to the right of the case. This section must be construed in connection with the harmless error statute, section 3206. It cannot be doubted the essential allegations requisite to state the offense of robbery of a banking institution with firearms are charged either in the language of the statute or in words of similar import; that defendant and his counsel knew with certainty what was intended by the pleader; that the court was able to pronounce judgment according to the right of the case; that the offense was so identified that no other prosecution for the same acts would lie and this is all the law requires. Martin v. State, 35 Okla. Cr. 248, 250 Pac. 552; Plemons v. State, 53 Okla. Cr. 263, 10 Pac. (2d) 285.

In attempting to bring the offense within the terms of the habitual criminal statute, the information alleges that on April 14, 1932, defendant had been convicted in the United States District Court of Illinois of robbing the mails and had been sentenced to serve 12 years in the United States penitentiary at Leavenworth, and had been committed thereto. The applicable statute is section 1820, Okla. Stat. 1931, which is:

"Every person who has been convicted in any other state, government or country of an offense which, if committed within this state, would be punishable by the laws of this state by imprisonment in the penitentiary, is pun-

ishable for any subsequent crime committed within this state, in the manner prescribed in the last three sections, and to the same extent as if such first conviction had taken place in a court of this state."

While only incidentally referred to in the record (C.-M.) 1723, 1724), yet in the course of oral argument it was disclosed the offense there referred to was the Rondout robbery, which occurred a short distance out of Chicago and a conviction had thereunder December 11, 1924. Counsel in argument referred to the rather full account of the circumstances of that crime in the April and the May, 1930, issue of True Detective Mysteries Magazine.

It is argued at some length that the court erred in overruling the motion to quash and set aside that part of the information alleging the prior conviction in the United States District Court. The motion to strike this part of the information also pleads a pardon issued by Pres. Hoover, dated April 29, 1932, which is just 15 days after the crime charged in the instant case and prior to the apprehension of defendant or knowledge that he participated in the crime. The allegation concerning the prior conviction was attacked by defendant at every point. It is stressed that the provisions of section 1820 do not apply to convictions in federal courts, citing Cherokee Nation v. Georgia, 5 Pet. (30 U. S.) 1-15, 8 L. Ed. 25; Faber v. U. S. (C. C.) 157 F. 140, 141; Gilmer v. Lime Point, 18 Cal. 229-255.

Section 1820 is all embracing in its terms. It not only includes a conviction in another state, but one in any other government or country. If it were limited to a conviction in another state or country, there would be much more force to the argument that the United States is not included. The Legislature evidently intended, by the use of the word "government" in connection with the other

terms used, to provide an increased punishment for those offenders previously convicted in any jurisdiction specified in said section 1820, whether domestic or foreign, including the general government of the United States.

Counsel further earnestly argue the failure of the court to strike out the allegation in the information with reference to the former conviction and permitting it to be read to the jury, as a part of the information was prejudicial error, that an unconditional pardon obliterated the offense which thereafter could not be imputed to him, citing Ex parte Crump, 10 Okla. Cr. 133, 135 Pac. 428, 47 L. R. A. (N. S.) 1036; Stephens v. State, 111 Okla. 262, 239 Pac. 450; U. S. v. Klein, 13 Wall. 128-147, 20 L. Ed. 519; U. S. v. Padelford, 9 Wall. 531, 19 L. Ed. 788; Osborn v. U. S., 91 U. S. 474, 23 L. Ed. 388; Ex parte Garland, 4 Wall. 333, 18 L. Ed. 366; Johnson v. State, 44 Okla. Cr. 113, 279 Pac. 933.

There is division of the authorities on this question. See annotations 58 A. L. R. 50; 20 R. C. L. § 41; Scrivnor v. State, 113 Tex. Cr. R. 194, 20 S. W. (2d) 416; Carlesi v. New York, 233 U. S. 51, 34 S. Ct. 576, 58 L. Ed. 843. The better rule is that on a charge of a second and subsequent offense the fact of a prior conviction, within the meaning of the statute, is not wiped out by a pardon; that the pardon by the executive power does not blot out the solemn act of the judicial branch of the government. This court has not had occasion to pass on this question, although there are dicta in Tucker v. State, 14 Okla. Cr. 54, 167 Pac. 637, which state the minority rule. It was not necessary to decide the point in that case and it is not necessary to decide it here since that part of the information was abandoned by the prosecution. In the light of developments at the trial, this part of the information

should not have been read to the jury, but that in no wise would justify a reversal.

Complaint is made of overruling application for change of venue. In support of his application defendant filed 55 affidavits. The state filed 87 counter affidavits which fully answer defendant's showing and, in addition, called and examined a great many of defendant's affiants. The force of their affidavits was greatly weakened by this examination. The presumption is that the defendant can have a fair trial in the county in which the offense was committed and the burden is on a defendant who seeks a change of venue to establish his right thereto. Davis v. State, 53 Okla. Cr. 411, 12 Pac. (2d) 555. In this day of paved highways, the wide use of rural telephones, daily papers, and radios, the mere fact that the inhabitants of a county have read and heard of the commission of a crime does not disqualify them. To warrant a change of venue, it must be made to appear they have a fixed opinion as to the guilt or innocence of an accused to the extent that an accused cannot have a fair trial by an impartial jury. Under the showing made, the court did not abuse his discretion in denying the application for change of venue. Johnson v. State, 35 Okla. Cr. 212, 249 Pac. 971.

Following the denial of a change of venue, an affidavit to disqualify the trial judge was interposed. The court made a finding adverse to the application and in this we perceive no error.

Several assignments are directed to evidence introduced by the state which defendant contends was incompetent. Among these items the witness Northcutt, one of the prisoners at the robbery who was for a time held inside the bank building, was permitted to testify he recognized defendant when he saw him in November follow-

ing the robbery. This witness testified at the time he saw the defendant he limped. This testimony was drawn out by defendant's counsel on cross-examination. Further he stated that prior to the time he saw defendant in November he had been shown a picture of him by an officer, which resembled one of the men engaged in the robbery. This testimony goes to the identity of defendant as a participant in the crime. A similar objection is made to the testimony of the witness Acord, who testified to the physical condition of defendant at or after his arrest in November, and further that he made certain tests upon a steel vest such as was found in the car of defendant and his brother at the time of their arrest, and that such vest would stop bullets. Objection is made to the testimony of the witness Wagner, an officer, in effect that guns, pistols, an acetylene outfit, and two steel vests were found in the car of defendant and his brother at the time of his arrest. Witnesses testified that at the robbery the participants wore peculiar appearing sweaters or vests similar to the steel vests found in the automobile of defendant. It having been shown that the robbery was committed by use of an acetylene outfit, and that the persons who committed it had similar appearing guns and pistols and wore garments in the form of sweaters similar to steel vests, it was not error to admit the evidence of such paraphernalia being found in possession of defendant and his brother at the time of their arrest. The rules of evidence will not be applied with such strictness as to exclude such articles found in the possession of an accused under the circumstances here shown.

In Sorenson v. U. S., 168 F. 785, 793, 94 C. A. A. 181, a burglary case was reversed because of the admitting in evidence certain things ordinarily used in the commission of burglary as fuse, nitroglycerine, skeleton keys, dynamite

caps, etc. In that case there was no evidence as to manner in which the building was entered nor the use of any of such weapons or implements and it was further shown that defendant was a coal miner and that some of such articles were used in his work. In passing on the question, the court said:

"In the multiplication of reported cases touching the evidential effect of the possession by the accused of implements and materials adaptable to the commission of the crime in question, it will be found that some courts have admitted such facts for the consideration of the jury when such possession was more or less remote from the time and locus of the crime; but their admissibility depended upon their being connected up with or traced to the res gestae. If the articles found on the defendant had been traced to his possession prior to the burglary or theft, and there had been any evidence tending to show the presence of the defendant about the premises near to the time of the trespass, and the like, the jury might have been advised that such possession of articles and implements, if the evidence tended to show that they were probably used in executing the crime, was a circumstance for their consideration."

See, further, People v. Radovick, 122 Cal. App. 176, 9 Pac. (2d) 542; People v. Mar Gin Suie, 11 Cal. App. 42, 103 Pac. 951; Quinn v. State, 55 Okla. Cr. 116, 25 Pac. (2d) 711.

Complaint is made of the admission of other items of evidence, but none are of sufficient importance to require special discussion. We find no ruling of the court admitting or excluding testimony which was materially erroneous.

Error is asserted in the instructions of the court and refusal of instructions requested by defendant. For instance, the instruction on the law of alibi is challenged

for the reason it does not tell the jury they should acquit if they have a reasonable doubt as to the presence of the defendant at the time and the place of the commission of the crime charged. The instruction, while not a model, is not subject to the same objection as the instruction criticized in Stuart v. State, 35 Okla. Cr. 103, 249 Pac. 159, and Beck v. State, 50 Okla. Cr. 325, 297 Pac. 820. The instructions, construed all together, fairly and correctly state the law applicable to the case.

Various assignments of error set out in the briefs have not been discussed; these have not been overlooked, but have had the attention of the court. Upon a consideration of the entire record, we are satisfied defendant is guilty as charged—that he had a fair trial, free from any material error.

The case is affirmed.

DAVENPORT and CHAPPELL, JJ., concur.