# JACK DEMP SCOTT v. STATE.

No. A-9824.   July 16, 1941.

(115 P. 2d 763.)

Jerome Sullivan, of Duncan, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J.   The defendant, Jack Demp Scott, was charged by information in the district court of Stephens

county with the crime of robbery with firearms, second offense; was tried, convicted, and sentenced to serve a term of 15 years in the State Penitentiary, from which judgment and sentence he appeals to this court.

Counsel for defendant argues that this case should be reversed for the following reasons:

(1) The evidence is insufficient to support the conviction.

(2) Material prejudice to defendant was caused by misconduct of counsel for state.

(3) The court erred in refusing to grant a continuance.

On the night of July 10, 1939, E. L. Williams and his wife were robbed with firearms in their home by Calvin Lee Camp and Benny Peoples, who pleaded guilty to the crime, and a third person alleged by the state to be the defendant in this case.

Calvin Lee Camp, who was serving a term in the penitentiary for participation in the offense with which defendant is here charged, was the principal witness for the state. His testimony, stated briefly, is that on the afternoon of July 10, 1939, he was at the home of Margaret Nottingham when defendant and Benny Peoples drove up in defendant's car. The car, a two-door sedan, was "a 1931 Model A Ford, not blue nor black, a sort of faded color," with yellow wheels. In the automobile were a sawed-off shotgun and a pistol. Leonard Nottingham was present and asked about the shotgun. Peoples put it under the front seat. Camp started back to Lawton with Peoples and defendant. On the way they discussed the proposed robbery. In Lawton the three of them went to a barber shop where witness had his shoes shined. He

stated that he had no conversation with the porter. They went from Lawton to Marlow where they bought some gasoline. Camp and Benny Peoples got out of the car and had a conversation with the filling station attendant about changing a $10 bill and a $20 bill. Defendant remained in the car.

They went then to the home of the prosecuting witness, Williams. Defendant knocked on the door. A light was turned on above the door. Defendant stated he wanted to buy some whisky, and Williams brought it to the door. When the whisky was handed to defendant, the two accomplices covered Williams with the pistol and a shotgun. Peoples had the shotgun and Camp, the pistol. Defendant did not have a gun. They made Williams and his wife lie on a bed with their hands up. Defendant searched the house. He found $30 in money, an old type shotgun which was described at length, a flashlight, and in taking Williams' watch from his pocket he jerked off the chain ring. They also took 57 pints of whisky. Before leaving, the three men broke the telephone connection, put Williams' car out of commission, and locked prosecuting witness and his wife in a clothes closet.

When the three reached Lawton, defendant brought the money out of his pocket and divided it. They hid the whisky on Cache creek that night. The next day they went back in defendant's car, but were unable to find the whisky. On the second day after the robbery, they went to certain pawnships in Lawton in an effort to dispose of the things they had taken from the Williams home. Defendant had the watch. They tried to sell it to Camp's stepfather. Defendant said that it had been pawned to him for $2.50.

Camp's stepfather had a 1931 Ford, a two-door sedan, black with red wheels. Witness stated that the only time

he had driven the car was the day he married Margaret Nottingham. Witness further stated that he had never been to El Reno in his life.

E. L. Williams, the prosecuting witness, and his wife testified substantially the same as Camp as to the facts of the actual robbery. Williams had known defendant when he was a boy, but had not seen him for several years. He could not identify him positively as being the third member of the band that robbed him. He stated that the man had a dark complexion and red hair like the defendant, but seemed to weigh a little more than defendant weighed at the time of the trial.

Mrs. Williams was unable to identify defendant. She knew that the third man had dark hair and was slow of speech. Both Mr. and Mrs. Williams explained their inability to identify the third party who searched the house, because the other two men had guns on them and their attention was directed at them while the third party took a flashlight and used it to make a search of the front room.

Leonard Nottingham stated that on July 10, 1939, about 4:30 in the afternoon, he saw Peoples, Camp, and the defendant at his father's house. They were working on the brakes of a Model A Ford, that was bluish-green in color. He saw a sawed-off shotgun in the car. The three boys drove off towards Lawton. The car they were driving was not the car of W. L. Camp, stepfather of Calvin Lee Camp.

Glenn Rollins testified that on July 10, 1939, around midnight, Peoples and Camp were driven by a third person to the filling station where he worked. They bought some gasoline and had a conversation about changing a $10 bill and a $20 bill. Witness could not identify the

man who was driving the car, which was a Model A Ford sedan of a dark, faded color.

W. L. Camp testified that on the 11th or 12th of July, 1939, his stepson, Calvin, inquired of him as to whether he wanted to buy a watch, and he said he would if it was cheap. Calvin took a watch from defendant and showed it to him; then returned it to defendant. This watch was a Waltham with an "R" on the back, the ring was missing, and undoubtedly belonged to the prosecuting witness. This witness further testified that his stepson had never driven his car.

Ruby Hise, who worked at Pennington's Pawn Shop in Lawton, stated that on July 11th, Peoples, Camp and defendant came into the store and wanted to trade an old shotgun, described as being the one stolen from Williams, and to sell the watch. Peoples had both of the articles, but they all three took part in the attempted trade.

Alma Yates testified, also, that they were in the store on that date.

Defendant offered an alibi, supported by the testimony of accomplice, Benny Peoples. The jury evidently did not believe the alibi.

It is necessary for this court to decide whether or not there was testimony corroborating accomplice, Camp, which tended to connect defendant with the commission of the crime.

No witness for the state offered direct corroboration of Camp that the defendant actually took part in the robbery. Nottingham stated that defendant started with the other two toward Lawton on the late afternoon of the day of the robbery in a car answering the description of the car which defendant drove. Rollins corroborates

Camp as to the description of the car they were in at Marlow before the robbery, but could not identify defendant. The prosecuting witness and his wife corroborate Camp on every point concerning the robbery, except as to the identity of defendant. Ruby Hise, Alma Yates, and W. L. Camp positively identified defendant in connection with the possession of the Williams property the next day after the robbery.

In Plemons v. State, 53 Okla. Cr. 263, 10 P. 2d 285, 287, this court said:

"The law prescribes no standard for the strength of corroborating evidence, and there is a failure to corroborate only if there is no evidence legitimately having that effect."

See, also, Hendrix v. State, 22 Okla. Cr. 230, 210 P. 734; Underwood v. State, 36 Okla. Cr. 21, 251 P. 507.

It is stated in Davenport v. State, 20 Okla. Cr. 253, 202 P. 18, 27:

"The rule, simply stated, is that the testimony of an accomplice must be corroborated by other evidence tending to connect defendant with the commission of the offense; that it is not necessary that such testimony, standing alone, should be sufficient to convict defendant; and that incriminating circumstances shown by the evidence are sufficient, if they tend to connect the defendant with the commission of the offense."

In the case of Henson v. State, 69 Okla. Cr. 273, 101 P. 2d 1060, this court held:

"It is not essential that the corroborating evidence shall cover every material point testified to by the accomplice or be sufficient alone to warrant a verdict of guilty. If the accomplice is corroborated as to one material fact or facts by independent evidence tending to connect the defendant with the commission of the crime, the jury may from that infer that he speaks the truth as to all. Such

corroborating evidence, however, must show more than the mere commission of the offense or circumstances thereof," citing: Bliss v. State, 47 Okla. Cr. 225, 287 P. 778; Moody v. State, 13 Okla. Cr. 327, 164 P. 676; Davis v. State, 18 Okla. Cr. 453, 196 P. 146; Hollingshead v. State, 21 Okla. Cr. 306, 207 P. 104.

In Henson v. State, supra, this court stated that where the testimony of three witnesses connect defendant with accomplices as being together in defendant's automobile the night the theft was committed, and another witness' testimony directly connected defendant with possession of some of the property which had just been stolen, evidence corroborating testimony of accomplices was sufficient to sustain conviction of the offense. The evidence herein corroborating the testimony of the accomplice, Camp, is stronger than in the Henson case.

It will be seen that there is independent evidence tending to connect defendant with the commission of the crime charged, and the weight and sufficiency of this evidence is for the jury, and, where the jury has returned its verdict, this court will take the strongest view of the corroborating testimony that the evidence warrants. Haas v. State, 37 Okla. Cr. 335, 257 P. 1115.

Counsel for defendant contends that defendant was materially and substantially prejudiced by conduct of the state in the examination of defendant's witnesses. Eight instances of the alleged misconduct are set out in defendant's brief. Defendant made objection to questions asked in only three of these instances and was sustained by the court in two of them.

In Henry v. State, 6 Okla. Cr. 430, 119 P. 278, it is stated:

"Necessarily the object of cross-examination is to break or weaken the force of the testimony given by the

witness on his examination. From this it follows that any matter which would have a tendency to lessen the credibility of a witness is a proper matter of inquiry on cross-examination. The general rule, therefore, is that anything which tends to show bias or prejudice on the part of the witness or anything which shows his friendship or enmity toward either of the parties is commonly a proper subject of inquiry; so, also, is anything which tends to show that in the circumstances in which he is placed he has a strong temptation to swear falsely."

The state was certainly not easy with defendant's witnesses; however, Benny Peoples was a particularly difficult witness and refused to answer many of the state's questions. The members of defendant's family who testified in support of his alibi were vigorously cross-examined by counsel for the state. There was justification for this in the state's attempt to show how much credibility should be given their testimony.

We do not think there was any error here, although such questions and answers were admitted without objection, as the county attorney had the right to ask such reasonable questions as might show an intimate relationship between witness and defendant or to show the occupation of the witness.

Defendant further alleges that the trial court committed reversible error in refusing his motion for a continuance of the trial, in which motion it was stated that defendant was suffering from an injury and was unable to attend court; that a subpoena had been issued for one Bill Wilburn in Pontotoc county and that no return had been made, and that defendant expected to be able to produce witness at the next term of court; that a subpoena had been issued for one Jimmy Cunningham in Comanche county and a return made showing him not found, and that defendant expected to be able to produce him at the

next term of court. The expected testimony of these two witnesses was set out in the affidavit attached to the motion.

Defendant offered a sworn statement by Dr. G. G. Downing that defendant was ill from a fall and would not be able to attend court in less than two weeks. The court refused a continuance on this ground for the reason that Drs. Garrett and Barber examined defendant and found him suffering from no injuries whatever and were of the opinion that he was able to attend court.

In Morrison v. State, 35 Okla. Cr. 311, 250 P. 543, this court stated:

"An application for a continuance on account of sickness of a defendant is addressed to the sound discretion of the trial court, and the overruling of such application is not error, unless there is an abuse of such discretion."

Counsel for defendant further urges that the court should have ordered the affidavit of the defendant concerning the expected testimony of the absent, nonresident witnesses to be admitted as true. This was not necessary. Owen v. State, 13 Okla. Cr. 195, 163 P. 548; Abby v. State, 72 Okla. Cr. 208, 214 P. 2d 499. However, we find that the court did order the affidavit of defendant as to the evidence expected to be proved by the absent witnesses to be admitted as true, so we find the court actually doing the very thing the defendant's counsel urges herein he should have done. Furthermore, the motion of the defendant for a continuance does not show any probability of securing the attendance of said witnesses at any future time to which the case might be continued.

In Hill v. State, 19 Okla. Cr. 406, 200 P. 253, 254, it is stated:

"There is no abuse of discretion in overruling an application for a continuance on the ground of the absence

of a material witness, where the affidavit presented in support of the application does not show any probability of securing the attendance of said witness at any future time to which the case might be continued."

In the case of Howard v. State, 67 Okla. Cr. 445, 94 P. 2d 947, this court said:

"An application for continuance in a felony case is addressed to the sound discretion of the trial court, and unless an abuse of such discretion clearly appears, this court will not reverse the judgment for refusal to grant a continuance."

Neary v. State, 52 Okla. Cr. 7, 1 P. 2d 819; McManus v. State, 50 Okla. Cr. 354, 297 P. 830.

No abuse of discretion by the trial court is shown by the record.

Finding no error substantially prejudicing the rights of defendant, the case is affirmed.

BAREFOOT, P. J., concurs. DOYLE, J., absent.