Evart Lional KYLE, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–13034.

Court of Criminal Appeals of Oklahoma.

Nov. 22, 1961.

Max Darks, Holdenville, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

The defendant, Evart Lional Kyle, was charged in the district court of Hughes County, Oklahoma, by information, with selling intoxicating liquor to a drunken man, one Mose Joshua, on May 25, 1960. He was tried to a jury, convicted and on November 17, 1960 was sentenced to pay a fine of $250, and has appealed.

This prosecution was brought under the provisions of Oklahoma Constitution, Art. 27, § 5, providing:

"It shall be unlawful for any licensee to sell or furnish any alcoholic beverage to: * * * A person who is intoxicated. * * *

"Sales, gifts, * * * shall be deemed a felony."

These provisions were activated by Tit. 37 O.S.A. § 538(g):

"Any person who shall knowingly sell, furnish or give alcoholic beverage

to an * * * intoxicated person shall be guilty of a felony, and shall be fined not more than One Thousand Dollars ($1,000.00), or imprisoned in the State Penitentiary for not more than one (1) year, or both such fine and imprisonment."

Briefly, the evidence is as follows: Mose Joshua was arrested by Sheriff B. G. Abernathy about 9:30 P.M. for drunkenness. The sheriff immediately took him to the police station, where a police officer, Stallings, and Highway Patrolman Cawley said he could not walk straight, and that he smelled of alcohol and strongly of wine, and without objection they were permitted to swear that in their opinions he was drunk.

Mose Joshua testified for the state, and admitted that he had been a drinker for a long time. He said that on May 25, 1960 he started drinking about 5 P.M.; that he and his two companions drank a considerable quantity of beer, then wine, which they bought at a liquor store. They then bought more wine and drank that, then drank more beer. It was then dark, and he did not know what time it was. The first three pints of wine were purchased by Simpson Nokuselle and Sampson Cotcha, his companions. After drinking the last beer, Mose went down to the liquor store and bought another pint of wine. Just a little north of the door of the store he was accosted by the sheriff. Mose admitted he was drunk. He remembered seeing officer Stallings and Patrolman Cawley. They had him walk for them. He was charged by the sheriff as a public drunk, entered a plea of guilty and was fined $20.

Joshua testified that he purchased the wine from a man in the liquor store by the bus station. He could not identify the man. He said, "I was drunk, you know."

Sheriff B. G. Abernathy said he and Mrs. Abernathy were driving down the street in Holdenville, Oklahoma, about 9 P.M. and passed Billie's Liquor Store. It was his policy to observe such places when

he passed them, and he saw the defendant Kyle and Mose Joshua in the store. Kyle was "tending the liquor store". No one else was in the store but Kyle and Mose. He testified he could tell by the way Mose was "waddling" or "staggering" about that he was drunk. He whipped his car around just as Mose was coming out. He stopped him and asked him if he had anything on him. Mose said no. The sheriff searched him, found a pint of Arriba wine on him, then returned to the store with Mose and asked Kyle if he sold the wine to Mose, and Kyle said, "Yeh, why? Is he too drunk?" The sheriff said he told Kyle Mose was "away too drunk, so drunk I am going to put him in jail."

An effort was made to establish on cross-examination that Mr. Kyle was disliked by the sheriff because Kyle had supported his political opponent. The trial judge sustained an objection to that line of questions. The sheriff had previously stated in response to questioning that he did not dislike Mr. Kyle. On re-direct examination he said he "believed in enforcing the liquor laws." (In any event, as sheriff he should, and was doing so.)

David Bolt, an agent of the Alcohol Beverage Control Board, investigated the case. He testified that Kyle was licensed by the Board to sell at retail as an employee at Billie's Liquor Store, which was located about two doors north of the bus station. He testified that Kyle admitted to him that he sold the wine to Mose Joshua. He testified Kyle said he was checking up, getting ready to close. Bolt said Kyle told him he noticed "Mose Joshua had been drinking but he noticed it after he had already made the sale."

Bolt identified the pint of wine offered in evidence as sold to Joshua as 20% alcohol content by volume, and "Arriba" Swiss Colony wine.

The foregoing testimony was admitted without objection.

The trial court overruled the defendant's demurrer to the evidence.

Defendant Kyle testified in his own behalf that he was a licensed employee in Billie's Liquor Store in Holdenville, Oklahoma. The store was owned by his wife. He admitted he was in charge of the store on May 25, 1960 about 9:30 P.M. He said he was counting the money in a little office in the store, had about $200 laid out, and Mose came in, picked up the wine and walked towards defendant around a table of wine, laid down fifty cents, and said, "I want this". There was nothing particular about his appearance. He admitted from the stand that he sold the wine to Joshua. He also admitted talking with agent Bolt, but said he told Bolt he did not think Joshua was drunk.

On cross-examination defendant stated he knew it was unlawful to sell to a drunk person and that it was his obligation to observe people who came in to buy, to a certain extent. He denied the incriminating admission the sheriff and the A.B.C. agent said he made as to Joshua being drunk.

In rebuttal the sheriff testified he saw no money in the store, as the defendant testified he was counting, at the time of the sale to Joshua.

■ The foregoing evidence, though conflicting, presented a question of fact for the sole determination of the jury. Sadler v. State, 84 Okl.Cr. 97, 179 P.2d 479.

The defendant attacks the arrest, search and seizure made of Mose Joshua as rendering the evidence inadmissible as being unlawfully obtained.

■ This court has repeatedly held that the right to attack the validity of a search and seizure and assert immunity therefrom is a personal matter, which is subject to being raised only by the person whose personal affects and premises are subjected thereto. It cannot be raised by a third person. Sanders v. State, Okl.Cr., 351 P.2d 1079; Penrod v. State, 38 Okl.Cr. 46, 258 P. 1052.

It is contended that Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, is controlling, but the privilege of immun-

ity therein was claimed by the defendant who was subjected to an unlawful search, not a third party.

Complaint is made that the trial court made a prejudicial statement as follows: "No, Mr. Huser, * * * let's not bring politics into this case. This man was either drunk or wasn't drunk, and he either bought the whiskey or he didn't buy it."

This is, in our opinion, not an incorrect statement of the law, as contended. It was a clear statement of the issue of fact for the sole determination of the jury. The evidence supports its verdict. The defendant cites no authority in support of this proposition. We think it is apparent why he did not.

Moreover, it is contended that there was no showing the defendant knew that Mose Joshua was intoxicated. Of course there is no way to determine what the defendant may have actually known, but there are ample circumstances to indicate that he should have known Joshua was drunk. Every one else who saw him knew he was drunk. The jury had ample evidence upon which to conclude that the defendant should have known such to be the case, if he had not deliberately closed his ears and his eyes to the facts, which the jury apparently believed the defendant did, in this case. In the liquor business, it is the intent of the law that a high degree of responsibility be placed upon the dealer to take care that he does not sell to a drunk man. The rule in such cases is stated in 30 Am.Jur. 672, § 237, wherein it is said, concerning statutes as herein set forth:

"These [statutes] usually place a duty upon the seller, before he serves a prospective purchaser, to use his powers of observation to see that which can easily be seen and hear that which can easily be heard, under the existing conditions and circumstances, although he is not required to subject his customers to tests which would disclose symptoms not readily apparent to one having normal powers of observation. In other words, in order to constitute a violation of such a provision, the person claimed to have been intoxicated to whom the sale was made must have been so far under the influence of intoxicants that his conduct and demeanor were not up to standard, and such conduct or demeanor should have been reasonably discernible to a person of ordinary experience."

Citing State ex rel. Gutter v. Hawley (Ohio App.) 44 N.E.2d 814, and People v. Johnson, 18 Cal.2d Supp. 973, 185 P.2d 105, 106, holding:

"The use of intoxicating liquor by the average person in such quantity as to produce intoxication causes many commonly known outward manifestations which are 'plain' and 'easily seen or discovered'. If such outward manifestations exist and the seller still serves the customer so affected he has violated the law, whether this was because he failed to observe what was plain and easily seen or discovered, or because, having observed, he ignored that which was apparent. Upon the trial, therefore, the facts constituting the alleged outward manifestations should be presented, and it is the exclusive province of the jury to determine whether or not they are such as to be obvious to a person having normal powers of observation, and recognizable as the usual indications of an intoxicated person."

In State v. Katz, 122 Conn. 439, 189 A. 606, it was said:

"Person who staggered in walking * * * before and after entering defendant's store *held* 'intoxicated person' within statute imposing penalty for sale of liquor to intoxicated person."

Staggering may constitute evidence of drunkenness when considered with all the other evidence, but that alone may not be conclusive on the question. In the case at

bar it is a strong circumstance, when considered with other manifestations leading to the conclusion of drunkenness.

The facts in this case disclose that the defendant did not take the precautions required by law before making the sale. The evidence shows that Joshua staggered in the store and after he left, and that he smelled strongly of wine. The fact that the sheriff exhibited Joshua to two other officers is, in our opinion, no indication of doubt on the sheriff's part, as contended by defendant.

As to an intoximeter test, the defendant was so drunk, as this record indicates, that no such test was necessary.

It is further contended the defendant was limited in his cross-examination, which if he could have pursued the matter would have disclosed that the sheriff had personal animosity towards the defendant.

The specific question in regard thereto was asked of the defendant if he did not "have it in for Mr. Kyle". The answer was, "No, sir, I don't have it in for Mr. Kyle." The defendant was bound by this answer until the contrary was established by proof to contradict, which could have been offered by defendant. A series of questions designed to establish innuendo of political animosity was injected by counsel for defendant as the reason for the arrest. It is well we note that no proof of either of these matters was offered by the defendant or by anyone else in his behalf. We are left to conclude counsel was laboring to "bring forth a mountain" and produced only a dim figment of imagination. Under this record we are left no other conclusion. It is true that if such had been the case it would have been a proper predicate for such defense proof of prejudice. Such is the holding in Gibbons v. Territory, 5 Okl.Cr. 212, 115 P. 129, cited by the defendant. See also Scott v. State, 72 Okl.Cr. 305, 115 P.2d 763. In both of the foregoing cases it is held that anything which tends to show bias or prejudice or that in the circumstances in which the witness is placed he has a temptation to swear falsely is a proper matter of inquiry. However, if a negative response is had to such inquiry and the proof goes no further that ends the matter, and innuendo created by counsel is not a substitute for proof of bias and prejudice which the defendant might have offered to impeach the sheriff's denial of personal prejudice. Such is the case herein. The fact that a citizen may have supported the sheriff's opponent in an election presents a very unstable foundation for the assumption the sheriff "had it in" for the citizen. This contention is wholly lacking in substantial merit.

Finally, the defendant says he was required to give evidence against himself.

With this contention we cannot agree. At no time during the entire proceedings did the defendant ever deny making the sale. He has always freely and voluntarily admitted it without objection, and so testified at the trial. His defense was that he just didn't think Joshua was intoxicated at the time of the sale. The fact that the defendant was under investigation and was not warned that any statement made by him might be used against him did not affect the admissibility of any voluntary statement made by him, which would otherwise be competent. Mays v. State, 19 Okl.Cr. 102, 197 P. 1064; Nance v. State, 41 Okl.Cr. 379, 273 P. 369; Prather v. State, 76 Okl.Cr. 385, 137 P.2d 249; Schrack v. State, 84 Okl. Cr. 260, 181 P.2d 270.

The defendant herein does not contend that his statement was other than voluntary. (Tharpe v. State, Okl.Cr., 358 P.2d 232). The trial court did not err in admitting the statement and evidence of admission of the sale.

For all of the foregoing reasons, the judgment and sentence is affirmed.

BUSSEY, J., concurs.

NIX, P. J., not participating.