Sherman C. EATON, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13453.

Court of Criminal Appeals of Oklahoma.

June 2, 1965.

Rehearing Denied Aug. 2, 1965.

Marshall Huser, Wewoka, for plaintiff in error.

Hugh C. Collum, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Sherman C. Eaton, hereinafter referred to as defendant, was charged by information in the District Court of Seminole County with the offense of Larceny of Domestic Animals. He was tried before a jury, found guilty, and his punishment assessed at Three Years in the penitentiary. He lodged his appeal timely in this Court, asserting three assignments of error:

(1) There was no competent evidence which would corroborate the testimony of the accomplice;

(2) The defendant was convicted upon hearsay testimony, therefore the verdict was not obtained by due process; and

(3) There was evidence of an offense other than the one charged.

The testimony reflects that a Mr. & Mrs. Dan Leitch, who lived on highway 270, west of Wewoka, discovered two calves missing on January 27, 1963.

Larry Wayne Newman testified that one Bill Trimble hired him to help load some cattle. That he and Bill went to the defendant's home, borrowed his pickup, and proceeded to borrow some sideboards to be used on the pickup in which they were to load the cattle. For his assistance in loading said cattle, he was to be paid $5.00.

Trimble later that evening came by and picked him up. They proceeded to the defendant's home, arriving there about 7:00 p. m. on January 26, 1963. After visiting awhile, defendant and Mrs. Eaton, Trimble, and Newman proceeded in the defendant's pickup to a place near the Leitch's home and loaded two calves. They then drove to Oklahoma City's Stockyards. While driving to Oklahoma City, defendant became drunk and Trimble took over the driving and completed the trip. When they arrived at the Stockyards, Trimble backed the pickup up to chute # 37 and with Newman's help, unloaded the cattle. He further testified that Trimble handled the transaction necessary for turning the cattle over to the Stockyards for sale. That defendant was at the time in the floorboard of the pickup, and because of intoxication, was not in a position to carry on much conversation. That he didn't know the cattle were stolen.

Mrs. Trimble testified that her son, Bill Trimble, received a check by mail 3 or 4 days after the alleged theft. The check was from the Central Commission Company, and given on the Stockyards Bank of Oklahoma City in the amount of $150.94. That her son went to the mail box, returned with the check, and opened it in her presence. That he told her where the stolen cattle were, and she immediately called Sheriff Nicholson. That some two weeks before defendant's trial, Bill Trimble left for Honolulu.

Sheriff Nicholson, who had previously inquired of Mrs. Trimble relative to any stray cattle, stated he received her call and went to her house at her request. That Trimble and Newman told him about the transaction and they proceeded to Seminole where Trimble and Newman were to meet the defendant and divide the money. On the way to Seminole, he saw the defendant in his pickup. That the defendant turned around and started back, and at that time, Sheriff Nicholson called the Under-Sheriff to pick him up. Defendant was apprehended and placed in jail.

The defendant testified that Bill Trimble talked with him on Wednesday before the cattle were stolen on Saturday, and offered him $25.00 to rent his truck to haul some cattle to Oklahoma City. That Trimble came by his home the following Saturday afternoon and got his pickup and went to get some sideboards. That Bill Trimble and Larry Newman returned to his house about 7 or 7:30. That he had made no arrangements with Newman whatsoever. After approximately 1½ hours, they proceeded to the Leitch farm and loaded the cattle. Defendant's wife followed in their car until it developed mechanical difficulties and they returned home and all rode in defendant's pickup. After loading the cattle, all four started to the stockyards. Defendant drove part of the way and admitted becoming intoxicated and turning the wheel over to Trimble. His contention was that he had no knowledge of the cattle belonging to someone else, that he merely rented his truck to Trimble and was to get $25.00 for the trip. On cross-examination of defendant, the following testimony appears:

"Q. All right. Well, Mr. Eaton, what do you reckon would possess a young man (Bill Trimble) that he would steal a couple of head of cattle out there and get you to go with him, and get $150.00 check in his hand and then go tell the Sheriff about it?

A. I didn't know he was stealing 'em.

Q. Well, thats what you testified to, wasn't it?

A. Not that he was stealing 'em. I didn't know he—

Q. Well, he did, didn't he? You're saying he did.

A. I'm saying—I know it now, yes, sir.

Q. Either he or Mr. Newman did, didn't they? You didn't.

A. We all stole 'em, if they were stolen, yes, sir."

Defendant's wife testified and related in substance a verification of defendant's testimony.

█ A review of this testimony compels us to hold adversely to defendant's contention that the testimony of Newman, the accomplice, was not corroborated sufficiently to justify a conviction. This may have been true had defendant and his wife remained silent. However, they testified to facts substantiating the testimony of the accomplice, Newman. They admitted Newman and Trimble came by their home as he had stated; that defendant and his wife went with them in defendant's pickup to the scene of the crime, loaded the cattle and drove to the stockyards in Oklahoma City where the cattle were unloaded. The only substantial difference in their testimony was that defendant contended he rented them the pickup for $25.00 to make the trip, while Newman stated defendant was to pay him $5.00 for helping him load the cattle.

█ The above quoted portion of defendant's testimony, as follows: *"We all stole 'em, if they were stolen, yes, sir."* is a statement that borders on a confession of guilt.

█ This Court has held numerous times that an accomplice need not be corroborated on every point. Crain v. State, 70 Okl.Cr. 45, 104 P.2d 450. Also, it has been held that corroborative evidence need not connect the defendant directly with the crime but is sufficient if it tends to connect him with its commission. Heartsill v. State, Okl.Cr., 341 P.2d 625. Also, the Court will take the strongest view of the corroborating testimony that such testimony warrants before it will set aside a verdict. Barrett v. State, Okl.Cr., 357 P.2d 1020. The law prescribes no standard for the strength of corroborating evidence, and there is a failure to corroborate only if there is no evidence legitimately having that effect. Plemons v. State, 53 Okl.Cr. 263, 10 P.2d 285.

Your writer believes that in view of the testimony and citations above listed, that

the testimony of the accomplice Newman was sufficiently corroborated.

Defendant's second contention of error alleges there was considerable hearsay evidence admitted during the trial, contrary to the Constitution of Oklahoma and the United States.

A review of the record reveals numerous instances where hearsay testimony was admitted by both sides. The most flagrant instances were given by the state's witnesses, Nicholson and Newman. It was admitted mostly without objection. In most instances the attorney for the defense chose silence to objections. The record is *completely void* of objections on the grounds the evidence constituted hearsay.

The brief of defendant makes the contention without citing particular instances, but deals with the question generally. Neither was it specifically raised in the Motion for New Trial.

█ It is highly improper for experienced police officers to give hearsay testimony, but unless the record is preserved, this Court can but assume it was agreeable with defense counsel.

█ The rule as stated by 1 Wharton's Criminal Evidence, § 255, is approved by this Court:

"If hearsay evidence is admitted without objection it may be considered as fully as though it were admissible. The only question being with regard to how much weight should be given to it under the particular circumstances of the time and place of making the declaration and the identity and knowledge of the declarent."

█ In the instant case, we do not feel that the admission of the testimony without objection constitutes error of sufficient magnitude to justify reversal. It would be considered for modification but for the fact defendant received the minimum sentence.

Defendant finally contends that the county attorney elected to prejudice the jury by interrogating the defendant relative to other crimes. He refers specifically to the following questions on page 152 of the casemade:

"Q. Have you ever been in the penitentiary any place?

A. That's right.

Q. How many times?

BY MR. LOONEY: Now just a minute, we object to this as incompetent testimony, and the county attorney has no right to ask that unless we've put the defendant's character into evidence. There's no questions asked on that subject.

BY THE COURT: It'll be overruled. He—you have a right to ask him if he's ever been convicted of a felony, (Interrupted)

BY MR. PIPKIN: Yes, sir.

BY THE COURT: That's the proper question."

That appears to be the only objection made by defense counsel and this Court cannot agree with the theory as expressed in counsel's objection.

█ It is the law by statute, that when a person takes the witness stand and has been convicted of a felony, it may be brought out to affect his credibility. Title 12 O.S.A. § 381, states:

"No person shall be disqualified as a witness in any civil action or proceeding by reason of his interest in the event of the same, as a party or otherwise, or by reason of his conviction of a crime; but such interest or conviction may be shown for the purpose of affecting his credibility."

As to this statute's applicability in criminal matters, see Winn v. State, 94 Okl.Cr. 383, 236 P.2d 512; Stacey v. State, 79 Okl.Cr. 417, 155 P.2d 736.

█ The objection above related was the only one offered during cross-examination concerning defendant's previous convictions, and we feel was requesting of the trial court to make an erroneous ruling.

A full consideration of the record does not reveal error properly objected to sufficient to constitute a reversal of this cause.

It is the order of this Court that the judgment and sentence of the trial court be affirmed.

BUSSEY, P. J., and BRETT, J., concur.