## STATE v. ELI WARD.

*Burglary—Evidence, Previous Statements of Witness; Declarations of Prisoner in His Own Favor.*

1. Upon an indictment for burglary it is competent for the State to show acts and conversations of the defendant which tend to fix him with a knowledge of the location of the premises, and the condition and circumstances of the prosecutor.

2. An impeached witness may be supported by showing previous consistent statements made by him.

3. Declarations of a prisoner, made after the crime was committed, in excuse or explanation of his acts, will not be received in evidence. Such declarations are competent only when they constitute part of the *res gestæ.*

INDICTMENT for burglary, tried before *MacRae, J.,* at January Term, 1889, of the Superior Court of NORTHAMPTON County.

The indictment contains two counts—the first charging the burglarious entering, with intent to kill and murder, and the second with intent to steal.

It was in evidence that, on the night of the 11th of January, 1889, the dwelling-house of W. H. Farmer was entered about midnight, by breaking through the window, and a most violent assault made upon the said Farmer, the burglar using a razor; and after a desperate struggle, in which the said Farmer was cut in several places with the razor, the burglar made his escape, having been first severely wounded by Farmer, who had wrested the razor from him and inflicted the wound therewith.

There was much evidence tending, overwhelmingly, to identify the prisoner as the burglar.

The witness W. H. Farmer, whose testimony is sent up with the record, details with minuteness, and at much length, the occurrence, and incidents connected therewith, in which, among other things, he said that he did not recognize the person who broke into his house, but knew that he was a colored man from his hair, and that a hat was left in the room by the burglar, which was afterwards identified as the prisoner's; that the prisoner had been at his house about 10 o'clock on the night of the burglary to see him, as prisoner said, about some cotton which he had promised to deliver, but had failed to do so; "that he (the prisoner) did not come but once that night; that I (he) recognized him. He had been there four or five times at night inside of two weeks, and once in the day he came to the store."

The prisoner objected to the testimony "that the prisoner had been there previous to the night of the alleged burglary."

Objection overruled. Prisoner excepted. This constitutes the first exception.

One Lewis Jordan, a witness for the State, testified that he saw the prisoner the day after the burglary, and details what occurred, and, among other things, that the prisoner

said one Farmer made him mad over a bale of cotton, and that " he broke in on him to kill him," and that he (prisoner) "got cut mighty bad."

The cross-examination of this witness tended to impeach him, and one D. A. Jordan was introduced and permitted to state what Lewis Jordan had told him, and that it was "almost identically the same as testified on the trial." This testimony was admitted, after objection, in corroboration of Lewis Jordan. This constitutes the defendant's second exception.

The counsel for the prisoner "proposed to ask this witness what statement the prisoner made before the Magistrate." Objected to by the State, as (made) at a different time from any statement brought out by the State. Objection sustained and prisoner excepted. This constitutes the third exception.

One Daniel Bishop, a witness for the State, testified that Mr. Farmer was married in December, and that when he went off to get married, witness stayed in his house; that " while Farmer was absent, Eli came the night Farmer went away, to see Farmer; it was about 9 P. M. when he came * * * He knocked at the door and said, 'Is Mr. Farmer in?' I said ' No; who is that?' He said, ' It is Eli Ward.' Said he wanted to see Mr. Farmer. Asked if he could come in. Witness said, ' O yes.' He came, sat down, and asked witness if he was attending to Mr. Farmer's house till he came. Was told that witness was. Prisoner asked witness if he was not ' afraid to stay there of nights ;' was answered ' No.' He said, 'I suppose you have plenty of weapons to keep you from being afraid ?' Witness said, ' Yes, plenty— a double-barreled gun, two pistols and two black-jacks." He asked witness, ' Don't you want a drink ?' We took a drink. He got sleepy—got to nodding. I said, ' Eli, the clock struck 11.' He said, all right; said tell Mr. Farmer he was coming again to-morrow night. I said he wouldn't be there to-

morrow night. He said he and Mr. Farmer had right smart dealings together—that Mr. Farmer had plenty of money there in the safe. I told him I reckoned he had right smart of paper, but not much money. He said he had right much dealings with Mr. Farmer. He had shown him in there, and he knew there was money in there. He told me to tell Farmer that he was coming back to see him. He asked me did I have my gun loaded. I told him yes; I showed him the gun and pistols. They were not really loaded." Objection by the prisoner to all of the testimony of Daniel Bishop. Objection overruled; defendant excepts. This constitutes the fourth exception.

There was a verdict of guilty, judgment, and appeal by defendant.

*Attorney General, Messrs. R. B. Peebles* and *W. C. Bowen,* for the State.

No counsel for the defendant.

DAVIS, J. (after stating the facts). The evidence sent up with the record can leave no reasonable doubt as to the fact that the prisoner is the person who entered the house of W. H. Farmer on the night of January 11, and it tends strongly to show both the intent to murder and to steal, and there are not conflicting intents, and either was sufficient.

The first and fourth exceptions may be considered together, as the admissibility of testimony excepted to in each rests upon the same principle, namely, that each tends to fix the prisoner with a knowledge of the location, condition and circumstances of W. H. Farmer.

In *State v. Howard,* 82 N. C., 623, the defendant was indicted for murder. The deceased was robbed on the night of the homicide, and it was offered in evidence that, twelve months before the homicide, the prisoner said to the witness, "Don't you reckon that if any one was to run in on old

man Babel Autrey (the deceased) he could get a handful of money?" The Court said: "The evidence of this conversation is clearly admissible, if for no other purpose, that it tended to affect the prisoner with a knowledge of the reputation that the deceased had money in his house"—it was in proof that he had that reputation.

We do not approve of the form in which the objection is taken to the testimony of the witness Bishop. It is "to all the testimony" of the witness, and seems to have been taken after it was all in, and the whole of it as sent up with the record in useless detail, though some of it was useless as harmless, but it was not incompetent.

The second exception was to the admission of the statements made by Lewis Jordan to D. A. Jordan for the purpose of corroboration. It is well settled, at least in this State, that it is competent to support the testimony of an impeached witness by showing previous statements made by him consistent with those testified to on the trial. *State* v. *Whitfield,* 92 N. C, 831, and cases cited.

The third exception is to the refusal to admit the declarations of the prisoner, made at a time different from those called out by the State. In *State* v. *McNair,* 93 N. C., 628, the Chief Justice said: " It is settled by repeated adjudications, that declarations of a prisoner, made after the criminal act has been committed, in excuse or explanation, at his own instance, will not be received, and they are competent only when they accompany and constitute part of the *res gestæ.*" This case and the authorities there cited conclusively dispose of the defendant's third exception adversely to him.

No error.                                        Affirmed.