Orville L. SCOTT, Sr., Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12401.

Criminal Court of Appeals of Oklahoma.

June 19, 1957.

Rehearing Denied Oct. 9, 1957.

Hickman & Hickman, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Ass't Atty. Gen., for defendant in error.

POWELL, Judge.

The defendant, Orville L. Scott, Sr., has appealed from a judgment and sentence rendered in the district court of Tulsa County, after conviction by a jury in a case where he was charged with conspiracy, as defined by 21 O.S.1951 § 424. The jury found the defendant guilty, but being unable to agree upon the punishment to be assessed, left that to the court, who imposed a sentence of nine months confinement in the State penitentiary at McAlester, and assessed a fine of $3500 and the costs, taxed at $98.50.

The prosecution was by way of indictment by a grand jury, and is very voluminous, requiring 37 pages of the record. There are 108 overt acts alleged. Plaintiff in Error, who will hereinafter be referred to as defendant, has as concisely as may be for proper understanding, outlined the charge as follows:

"The indictment charged that the defendant and Tom White, Sr., and Tom White, Jr., named therein as co-conspirators, conspired together in violation of Title 21, Section 424, Oklahoma Statutes Annotated 'to commit offenses against the State of Oklahoma and to cheat and defraud the State of Oklahoma, by doing acts constituting violations of Title 21, Section 341, Par. 2, Oklahoma Statutes Annotated.' The indictment contains 108 overt acts which it is alleged were committed by one or more persons to effect the objects of the conspiracy. The indictment, in substance, charged that the defendant was an employee of Tulsa County, Oklahoma, to-wit: the Garage Superintendent of the County Commissioner of District No. 1; that the co-

conspirator, Tom White, Sr., at the time of the commencement of the conspiracy, which was alleged to be July 1, 1951, down to his death on February 13, 1954, was president and manager of Motor Exchange Tire Company, a corporation, which was engaged in the business of selling motor vehicle tires and accessories, household appliances, boats, boat motors and fishing equipment; that the co-conspirator, Tom White, Jr., was from February 14, 1954 up to the time the indictment was returned, the president and manager of Motor Exchange Tire Company, having succeeded his father upon the latter's death; that the agreement between the defendant and his co-conspirators was to the effect that Motor Exchange Tire Company would sell and deliver tires and truck accessories to Tulsa County Commissioner's District No. 1 and that certain household appliances, boats, boat motors and other things of value would be sold and delivered to the defendant for his own personal use and for the personal use of his son, Orville L. Scott, Jr.; that payment of the aforesaid household appliances and merchandise would be made by Tulsa County, that is, that Tom White, Sr. would prepare written invoices for tires and truck accessories purportedly sold to Tulsa County and said written invoices would be submitted to the defendant for his signature showing receipt of such tires and truck accessories by and for Tulsa County Commissioner's District No. 1, but that in fact said tires and accessories would not be delivered to the county; that Tom White, Sr. would prepare or cause to be prepared and sign or cause to be signed written claims against the county and would submit such claims to the Board of County Commissioners for reimbursement to the Motor Exchange Tire Company for said tires and truck accessories which were not in fact delivered to Tulsa County; that the defendant would acknowledge receipt of such tires and accessories which were not in fact delivered to Tulsa County, well knowing that he, the defendant, would derive a financial and monetary gain therefrom; that upon approval of such claims by the Board of County Commissioners, Tom White, Sr. would receive from the County a warrant in payment of said claims for tires and accessories which were not in fact delivered to Tulsa County; that Tom White, Sr. would thereafter receive the warrants in payment of the household appliances and fishing equipment and other things of value sold and delivered to the defendant and his son. The indictment further charged that on or about February 13, 1954, Tom White, Sr. died and that the co-conspirator Tom White, Jr., became president and manager of Motor Exchange Tire Company and that he assumed his position with the company with full knowledge of the unlawful agreement which his father had entered into with the defendant and that he, Tom White, Jr., entered into and became a part of the conspiracy and engaged in furthering its objects and purposes and did carry out the unlawful agreements above set forth.

"The indictment further charged that the object and purpose of the conspiracy was that the defendant would acquire these appliances and other things of value for his own personal use and pay for them by signing invoices acknowledging receipt of tires and accessories purportedly sold to Tulsa County but which were not in fact sold to Tulsa County or to anybody.

"The overt acts contained in the indictment concern every item of merchandise purchased by and charged to the account of Orville Scott, Sr. and Orville Scott, Jr., describing the merchandise and the value thereof; the preparation of invoices by Motor Exchange Tire Company for merchandise purportedly sold to Tulsa County, the

act of acknowledgment of receipt of such merchandise by the defendant, the preparation of claims by Motor Exchange Tire Company, the filing of the claims with the county, the receipt of warrant in payment of the claim, the application of the amounts represented by the warrants to the credit of the accounts of Orville Scott, Sr. and Orville Scott, Jr."

The defendant demurred to the indictment, and the same was overruled.

Grounds advanced for reversal are, in defendant's words: first, that the court erred in overruling defendant's demurrer; and, second, that the evidence of the State was insufficient to submit the cause to the jury, and that the court erred in overruling the defendant's motion made at the close of the State's case to advise the jury to acquit. The latter is based upon the contention that the evidence of the State consists entirely of evidence of co-conspirators or accomplices, and that there was no corroboration sufficient to support the evidence of the accomplices.

Considering first the demurrer to the indictment. The defendant, as we have seen, is alleged to have conspired with Tom White, Sr., and Tom White, Jr., in violation of 21 O.S.1951 § 424, by doing acts constituting violations of 21 O.S.1951 § 341(2). Defendant contends that he is not a person who comes under section 341, which provides:

"Every public officer of the State or any county, city or town, or member or officer of the Legislature, and every deputy or clerk of any such officer and every other person receiving any money or other thing of value of or for account of this State or any department of the government of this State or any bureau or fund created by law and in which this State or the people thereof, are directly or indirectly interested, who either:

* * * * * *

"Second: Receives, directly or indirectly, any interest, profit or perquisites, arising from the use or loan of public funds in his hands or money to be raised through his agency for State, city, town, district, or county purposes; or * * *."

Defendant argues as to section 341(2) of Title 21, O.S.1951:

"We think the statute is intended to cover those officers, their deputies and clerks, and every other person, who receives money or other things of value on behalf of or for the account of the State or a subdivision thereof, such as a county. We urge the proposition that one whose position as an employee of a county which does not involve the receipt of any money or other thing of value, cannot be charged with a violation of this section. The indictment nowhere charges that the defendant occupied a position that placed in his hands public funds or any other type of money raised through any agency of the county."

Defendant continues:

"The indictment charges nothing more than a conspiracy to file claims against Tulsa County and when such claims were approved and payment received, to use the proceeds for the benefit of the conspirators."

Basically, the charge was, as stated, a conspiracy, alleged to have been entered into in violation of 21 O.S.1951 § 424. That section reads:

"If two or more persons conspire either to commit any offense against the State of Oklahoma, or to defraud the State of Oklahoma in any manner or for any purpose, and if one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars ($10,000.00) or to imprisonment for not more than two years or to both fine and imprisonment in the discretion of the court or jury."

■ It is apparent, as contended by the defendant, that the further reference to 21 O.S.1951 § 341(2) in the indictment was

erroneous, as that section could not be applicable to the defendant in this case because he was only an employee of the county commissioner of District No. 1, Tulsa County, Jim Hardesty. Defendant in fact was not a public officer, the deputy or clerk of a public officer, receiving money on behalf of the State, or receiving any interest therein arising out of the use of public funds in his hands.

■ The question now arises as to whether the erroneous reference to Section 341(2) of Title 21 O.S.1951 vitiates the indictment. The Attorney General argues that such reference constituted surplusage and may be completely ignored. He points out that the rule has been stated in 42 C.J.S., Indictments and Informations, § 138, p. 1034, as follows:

"As a general rule, a misrecital of the statute does not avoid the indictment where the facts stated constitute an offense under any statute, especially where the objection is raised after plea of guilty. The misrecital may be rejected as surplusage, at least where the conclusion is generally as 'contrary to the statute in such case made and provided.'"

Among the authorities supporting the rule are Johnson v. Biddle, 8 Cir., 12 F.2d 366; Harper v. United States, 8 Cir., 27 F.2d 77, and Capone v. United States, 7 Cir., 51 F.2d 609, 76 A.L.R. 1534.

In the Harper case the court said:

"That pleader in indictment charged conspiracy under Criminal Code, § 37 (18 U.S.C.A. § 88), to violate section 136 (18 U.S.C.A. § 242), instead of conspiracy to violate section 135 (18 U.S.C.A. § 241), was immaterial, where language fully stated offense denounced by statutes, since statement that facts violate certain section is nothing more than pleader's conclusion, which may or may not be correct."

■ The indictment by its averments clearly charges an offense under 21 O.S. 1951 § 424, above quoted, and the court by its instruction No. 4, made that clear to the jury. We conclude that the trial court did not err in overruling the demurrer.

The next and final assignment of error involves the sufficiency of the evidence. It is earnestly contended that the evidence was insufficient to justify conviction. In a sentence, defendant's argument is summarized in his statement, "That the evidence of the State on which this contention is based comes from co-conspirators and accomplices and is uncorroborated."

The record discloses that Tom White, Jr., and Dan (John D.) Bewley, witnesses for the State, were both granted immunity from prosecution when they testified before the grand jury. The record shows that they, with Tom White, Sr., who died prior to the grand jury action, were accomplices of Orville L. Scott, Sr., and Orville L. Scott, Jr., in the conspiracy charges.

Tom White, Jr., testified for the State. He said that he was president and manager of the Motor Exchange Tire Company, Tulsa, and the nature of his business was tires, re-capping, batteries, and associated equipment, and they also carried a line of sporting goods and small appliances. He had been president and manager of the business since February 14, 1954, succeeding his father, who died on February 13, 1954. He said that during the time his father was president and manager of the corporation, and during the time he had so acted, his company did a large volume of business with Tulsa County, consisting mainly of tires, re-capping, batteries, and tire service. He said that during this time the defendant Orville L. Scott, Sr., was garage superintendent for Tulsa County Commissioner's District No. 1, and that he had known him since in 1950 or 1951. He said that after his father's death, he found some invoices· in the safe showing merchandise billed to Tulsa County; that the normal procedure was to place all invoices in a basket during the work day and they would go to the bookkeeper the following day. That he checked the books and records and discovered that none of

the invoices in question were entered in the sales journal "as a normal invoice would have been, and some of these I believe had already received a warrant covering payment of them, and some of the others the warrants had not yet come back on them."

Witness said that following the discovery of the invoices, he found that there was an outstanding account against Orville L. Scott, Sr. He testified that he approached the defendant and asked him if he wanted to settle his account in the manner in which he had done during the time Tom White, Sr., was living, and that the defendant agreed to this plan. He further testified that he directed the salesman, Bob Fleener, to invoice the county for certain tires and other equipment and to take the invoices out to Scott and have him acknowledge receipt thereof; that after procuring Scott's receipt on the invoices he had another employee present them to the county engineer, await the preparation of a claim against the county, swear to the claim before a notary public or county official, and file it with the county clerk in order that the commissioners might approve it and that payment would thereby be made. He further testified that he directed Mrs. Gordon, the bookkeeper, to credit the defendant's personal account with the company with the proceeds from these county vouchers or warrants, and that within the course of a couple of months the defendant's account balanced, and there was no longer an indebtedness owing. Witness further testified that the merchandise shown on the invoices which he thus directed salesman Fleener to prepare, was not in fact delivered to Tulsa County. The invoices were numbered two to six, inclusive.

Witness said that he talked to the defendant Scott about paying off a note account he had with the Company, and that it was paid off by county warrants.

John D. Bewley testified that he was vice-president of Motor Exchange Tire Company, and the son-in-law of the late Tom White, Sr. He said that he was in charge of sales and testified in detail concerning invoices 7 to 41, inclusive, covering mer-

chandise sold to either Orville L. Scott, senior or junior. These invoices covered various kinds of merchandise, such as electric blanket, electric toaster, kitchen clocks, Westinghouse cleaner attachments; General Electric sweeper, fan, car battery, etc. He said he never received pay, either cash or check, for any item, and had nothing to do with the bookkeeping and was never informed of the status of defendant's account with reference to debits or credits.

Bob Fleener testified that he had been a salesman for Motor Exchange Tire Company for a little over four years; that he had known the defendant for about six years, and that during a period from 1951 to 1954 defendant was garage foreman for County Commissioner's District No. 1, Tulsa County. Witness said that he would call on him to sell Tulsa County tires, tubes, batteries and to re-tread tires. It was the custom, he said, for the salesman making the sale to write out the invoice. He said that both Tom White, Sr., during his life time, and thereafter Tom White, Jr., had directed him to prepare certain invoices showing the sale of items to Tulsa County and had made him responsible to see that the invoices were signed by the defendant Scott. He did not know whether or not the merchandise covered by the invoices was ever actually delivered to Tulsa County; that at the time he thought it was; that he never did of his own personal knowledge know for sure. Witness also identified invoices covering motor vehicle supplies and sporting goods items sold the Whites on credit.

Delmer Andrews, deputy clerk in the Tulsa County Clerk's office testified concerning claims numbered 43 to 53 and warrants in payment numbered 54 to 64, and explained the procedure followed in allowing claims and making payment. He testified to the payment of the invoices mentioned by the county warrants set out above.

Mrs. Flora E. Gordon testified that she was employed as bookkeeper for Motor Exchange Tire Company from in September, 1944 to December, 1954. That Tom White, Sr., employed her. She said the business was originally a partnership between Tom

White, Sr., and his wife, but in 1946 it was incorporated. Witness was given one share of stock. She handled accounts receivable, pay rolls, acted as cashier and miscellaneous office duties. She did not wait on customers or write invoices. She kept the sales journal, cash receipts and ledger accounts. She testified at length, 159 pages of the casemade, concerning ledger sheets, petty cash slips, invoices, loan cards, cash register tapes, etc., involving sales to Tulsa County and to the Orville L. Scotts, senior and junior.

Witness was asked if she ever had any special instructions as to the handling of invoices to Orville L. Scott, or to Orville L. Scott, junior. She testified that in the fall of 1953 there was a grand jury in session or a rumor of one. She said: "Mr. White told me if I received invoices that did not have the 'junior' or the 'senior' on the invoice where it says 'Sold to:' that I was to call it to his attention. That is, if it was an invoice for a large amount and the reason for that was, he said, that he did not want too large a balance on Orville Scott, Senior's account." She further said that Mr. White instructed her that if any one asked to see the records of the county employees or the County Commissioners, that they were not to see them. She testified to $36 worth of football tickets being purchased from Tulsa University for Orville Scott's account.

Witness testified to finding in the safe the same invoices that had been held out and that Tom White, Jr., had found after his father's death. And there was received in evidence a letter that Mr. White had written her just prior to his death. It read:

"Dear Flora:
"If you receive any warrants covering invoices that have not been charged, please credit it to petty cash.
"Hope you had a nice vacation. I will be in Canada for a week by the time you read this, *wether* permitting. May get back Friday or Saturday. Keep the gang looking after the customers, if you can. Tom."

On cross-examination witness was handed State's exhibits 2, 3, 4, 5, and 6, five invoices, all signed by Mr. Fleener, as salesman, and was asked when she had first seen them. She denied ever having seen them before, and had therefore never entered them on the sale journal as sales, or the ledger account of Tulsa County for merchandise allegedly sold to Tulsa County.

Tom White, Jr. was recalled by the defense for further cross-examination concerning exhibits 2 to 6, and he reiterated that he made up the items of the invoices "out of my head" and requested salesman Fleener to take them to Scott for his signature. Said he:

"After they were prepared and signed by Mr. Scott and returned to me, then I placed them either in my desk or in the safe until the county warrants paying these particular invoices came to us through the mail. Q. Then, what did you do? A. At which time I would credit the County warrants to Mr. Scott's account and within a period of a week or ten days, I would take these particular invoices and go to our permanent invoice file and find the location where they are filed numerically and find the place where a particular invoice would go in numerical order and place the journal posting designation on it."

The defendant testified and denied conniving to get Tulsa County to pay his accounts with the Motor Exchange Tire Company. Orville L. Scott, Jr. testified likewise. They testified that they got salary checks cashed there, and made frequent payments on account.

 The question is, was there corroboration of the testimony of co-conspirators White and Bewley? And was the bookkeeper, Mrs. Gordon, a co-conspirator or an accomplice?

The problems here were presented in the appeal of J. W. Hardesty, County Commissioner, District No. 1, Tulsa County. He, incidentally, was defendant's sponsor during the period involved herein. In that case

(Hardesty v. State, Okl.Cr., 291 P.2d 351, 360) we quoted from Rushing v. State, 88 Okl.Cr. 82, 199 P.2d 614, 615, where this court said:

"Evidence corroborative of an accomplice need not directly connect the defendant with the commission of the crime; it is sufficient if it tends to connect him with its commission.

"Evidence corroborating an accomplice and tending to connect the defendant with the commission of the crime need not be direct, but may be circumstantial only.

"Where there is evidence in corroboration of an accomplice tending to connect a defendant with the commission of the crime charged, the sufficiency of such corroborating evidence is for the jury.

"Where the sufficiency of the evidence to corroborate an accomplice is challenged, this court will take the strongest view of the corroborating testimony that such testimony will warrant, and, if it can say that there is corroborating evidence tending to connect the defendant with the commission of the offense, it will uphold the verdict."

There we also quoted from Scott v. State, 72 Okl.Cr. 305, 115 P.2d 763, 765, wherein we quoted with approval from Davenport v. State, 20 Okl.Cr. 253, 202 P. 18, as follows:

"The rule, simply stated, is that the testimony of an accomplice must be corroborated by other evidence tending to connect defendant with the commission of the offense; that it is not necessary that such testimony, standing alone, should be sufficient to convict defendant; and that incriminating circumstances shown by the evidence are sufficient, if they tend to connect the defendant with the commission of the offense."

And quoted from Henson v. State, 69 Okl.Cr. 273, 101 P.2d 1060, in which we held:

"It is not essential that the corroborating evidence shall cover every material point testified to by accomplice or be sufficient alone to warrant a verdict of guilty. If the accomplice is corroborated as to one material fact or facts by independent evidence tending to connect the defendant with the commission of the crime, the jury may from that infer that he speaks the truth as to all. Such corroborating evidence, however, must show more than the mere commission of the offense or circumstances thereof." [Citing cases.]

We also said in the body of the opinion in the Hardesty case:

"[T]he true test as to whether a person is an accomplice, requiring corroboration of his testimony, is whether his participation in the crime was such as to make him criminally corrupt."

The court instructed the jury, instructions Nos. 11 and 12:

"No. 11. You are instructed that in this case the witnesses, Tom White, Jr. and Dan Bewley, who have testified herein, are admitted accomplices, and for that reason you cannot convict the defendant upon the testimony of said witnesses, Tom White, Jr., and Dan Bewley, unless you find that other evidence in the case than the testimony of the witnesses Tom White, Jr., and Dan Bewley, connect the defendant Orville L. Scott, Sr., with the commission of the offense.

"You are further instructed that such corroborating evidence may be circumstantial, and it is not necessary that the required corroborative evidence cover every material point testified to by the said Tom White, Jr., and Dan Bewley, and it is sufficient if you find that the evidence of Tom White, Jr. and Dan Bewley is corroborated in some material point which tends to connect the defendant, Orville L. Scott, Sr., with the commission of the offense.

"In this connection, you are further instructed that Tom White, Sr., and Lee Fairchild are likewise accomplices within the meaning of this instruction, and any acts or statements attributed to them concerning this alleged conspiracy shall not be considered as evidence against the defendant on trial unless you first find that a conspiracy involving this defendant has been proven by competent evidence beyond a reasonable doubt. You may, however, consider such acts and declarations, if any are shown by the evidence, provided they are corroborated by evidence other than evidence by any of the alleged conspirators.

"In this connection you are further instructed that in considering the testimony and evidence of those whom the Court has told you are accomplices and those who you find are accomplices under the definition of accomplices given you herein, you should view and consider such testimony and evidence with great care and caution.

"No. 12. You are instructed that in determining the question as to whether or not the testimony of an accomplice has been corroborated, you may eliminate his testimony entirely and then examine all of the remaining testimony, facts and circumstances and ascertain from such examination whether there is any evidence tending to connect the defendant with the offense with which he is charged in the indictment, and if there is, then proof of the accomplice is corroborated.

"You are instructed, however, that one accomplice cannot corroborate another so as to authorize a conviction on the testimony of two or more alone."

The record does not show that it was ever contended that the bookkeeper, Mrs. Gordon, was a co-conspirator or an accomplice. No instruction was submitted or requested whereby such issue might have been determined by the jury, as was the case in Hardesty v. State, supra. There is

no evidence that either Tom White, Sr. or Tom White, Jr. ever admitted to Mrs. Gordon that the merchandise listed on the various invoices received in evidence was not actually delivered to the county of Tulsa. She was, however, aware of the discrepancies and inconsistencies in the peculiar manner in which the accounts of Orville L. Scott, senior and junior, were handled by Tom White, Sr. and Tom White, Jr., and no doubt was suspicious of the transactions. It might be from a strict standpoint, that Mrs. Gordon should have made inquiries of her employers concerning these accounts and should have resigned her job if the answers did not satisfy her. However, as we view it, the Attorney General has pointed out records showing the signature of the defendant and which records stand unrefuted, that in themselves corroborate the testimony of Tom White, Jr.

State's Exhibit 4 is an invoice No. 28301, dated February 24, 1954, purporting to show the indebtedness of Tulsa County in the sum of $86.75 for tire and tube repairs. A noticeable thing is that the items shown are exactly repeated in a later invoice. The invoice is signed by the defendant on behalf of the County as having received the items. Exhibit No. 82 consists of seven double-page sheets showing the account of Tulsa County with Motor Exchange Tire Company, for the period January 9, 1953 to July 30, 1954. An examination of these ledger sheets does not show this invoice No. 28301 to have ever been entered upon the account as an obligation of the County. The witness Tom White, Jr., testified, as we have seen, that the items represented by this invoice were never delivered to the county, but claim No. 3297 for the amount of this invoice was filed against the County, allowed, and warrant No. 1397 issued in payment thereof. The warrant was dated March 17, 1954 and was duly cashed, but no item thereof was ever entered as a credit on Tulsa County's account with the Motor Exchange Tire Company. The ledger shows a credit of $193.82 entered on

March 23, but this was on warrant No. 1396 which covered another claim and invoices, respecting a valid indebtedness. The fraudulent nature of the transaction is evident.

State's Exhibit No. 5, invoice No. 29397, is identical with invoice No. 28301, supra, except that the order of the items has been changed and the date is made as of May 4, 1954. State's Exhibit No. 6, being invoice No. 21109, for a tire and tube allegedly delivered to Tulsa County, dated May 10, 1954 and signed by the defendant as receiving the same for the County, is of like nature. According to the testimony of Mr. White, the items shown on these invoices were not delivered to Tulsa County, nor do they appear as obligations of the County on the ledger of the Motor Exchange Tire Company. Exhibit No. 5 was, however, included in claim No. 18227 which was for a total of $92.25, and Exhibit No. 6 was included in claim No. 18226 for a total of $191.52. These two claims, together with claim No. 18225, in the sum of $99.04 for items legitimately delivered to the County, were allowed and warrants Nos. 8430, 8429, and 8428 issued in payment thereof. These warrants total the sum of $382.81. They were dated June 2, 1954, and received by Motor Exchange Tire Company on June 7. On that day, an amount of $126.64 was entered as a credit on the ledger account of Tulsa County. The difference between the amount of the warrants and the amount of the credit is $256.17, which is exactly the amount of the two invoices said by Mr. White never to have been delivered to Tulsa County. Mr. White testified that such amount was placed to the credit of Orville L. Scott.

State's Exhibit No. 74 is invoice No. 19861 dated June 24, 1953 in the sum of $212.60 for tires purportedly sold to Tulsa County and received by Orville L. Scott, Sr. This voucher was attached to claim No. 1799. The claim was for $228.60, six other very small vouchers totalling only $16 being included. The claim was filed June 30, 1953 and allowed at the July meeting. In payment of same, warrant No. 1724, in the sum of $228.60 was issued and delivered to the Motor Exchange Tire Company. This warrant constitutes State's Exhibit No. 56. It was dated July 10 and was received and cashed by Motor Exchange Tire Company and credited as follows: $200 credited on July 14, 1953 to the account of Orville L. Scott, Sr., defendant; $12.60 to the credit of Orville L. Scott, Jr., and $16 to the credit of Tulsa County. The County also received credit in the sum of $39.33, but this was accounted for by claim No. 1801, paid by warrant No. 1726 in that amount.

The next transaction we shall consider is clear, conclusive and corroborative. State's Exhibit No. 79, invoice No. 24425, bears date of October 27, 1953, and purports to be for tires and tubes sold to Tulsa County in the total sum of $323.64. The whole transaction was handled by White, and the defendant personally. No other salesman or employee was involved. The carbon copy of the invoice is attached, including the carbon signature of the defendant. The signature being thus in carbon shows that the invoice was prepared in White's office and signed by the defendant before it had ever been detached from the pad.

At the same time, White made Scott a loan, otherwise unsecured, in the sum of $461.67, due with six per cent interest on December 1, 1953. Scott signed two cash receipts, one for $100, and one for $361.67.

Invoice No. 24425, supra, was attached to claim No. 2626, dated November 15, 1953, together with invoice No. 24464 in the sum of $5.75, making a total amount of said claim in the sum of $329.39. Also prepared and filed on behalf of the Motor Exchange Tire Company was claim No. 2627, with six invoices attached in the total sum of $167.-22. These six invoices, together with invoice No. 24464 in the sum of $5.75, above mentioned, were entered as charges against Tulsa County on the books of Motor Exchange Tire Company. The total obligation of Tulsa County was, therefore $172.-97.

The claims were allowed and warrants Nos. 746 and 747 were issued under date

of November 18, 1952. The warrants were cashed and the proceeds credited as of November 20, 1953, as follows: To the account of Tulsa County $172.97; credited on the Orville L. Scott loan, $324.36.

As we stated in the beginning, there are 108 overt acts charged in the indictment, and we have before us the various exhibits received in evidence in support of the charges. These were secured from the court reporter because not included in the casemade submitted by the defendant. We believe, however, the above illustrations afford sufficient corroboration of the testimony of the State's witnesses to support the verdict and judgment.

The jury was unable to agree upon the punishment. It is our opinion, in view of the circumstances of this case and the holding in Hardesty v. State, supra, that the fine assessed by the court is excessive, and the same is reduced from $3,500 to $1,000, and the judgment and sentence as thus modified is affirmed.

BRETT, P. J., and NIX, J., concur.